IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK LANGER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE GEORGE WASHINGTON ) | Case No. 1:07CV00262 (EGS) |
| UNIVERSITY ) | |
| ) | **JURY TRIAL DEMANDED** |
| and ) | |
| ) | |
| JACK A. SIGGINS ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT JACK A. SIGGINS' PARTIAL MOTION TO DISMISS**

Plaintiff Mark Langer ("Plaintiff"), by his undersigned counsel, hereby submits his Memorandum in Opposition to Defendant Jack A. Siggins' Partial Motion to Dismiss (the "Motion").

**I.   Introduction**

This is an action to redress deprivation and interference of rights secured by the Family and Medical Leave Act, 28 U.S.C. § 2601, *et seq.* ("FMLA"), the District of Columbia Human Rights Act ("DCHRA"), the District of Columbia Family and Medical Leave Act, D.C. Code §§ 32-501 *et seq.* ("DCFMLA"), and related common law claims, against Defendants The George Washington University ("GW") and Jack A. Siggins. As relevant here, two of the related common law claims, found at Counts VII and VIII of Plaintiff's Complaint, assert causes of action sounding in intentional tort against Defendant Siggins. By his Motion, Defendant Siggins seeks to have the Court dismiss these claims from the case. As set forth below, the Motion ignores many relevant

facts, seeks to have the Court apply the wrong legal standards, relies upon inapposite case law, and should be denied.

## II.     Factual and Procedural Background

Plaintiff has suffered from major depressive disorder, attention-deficit disorder, and chronic migraine headaches for much of his adult life. Complaint ¶ 6. Plaintiff has a record of his disabilities (Plaintiff was officially diagnosed with these mental conditions in 1995). *Id*. Plaintiff's disabilities substantially limit his ability to perform the major life activities of caring for himself, sleeping, working, thinking, analyzing, and commuting, among others. *Id*.

Plaintiff began working for GW in July 2003 as the Head of Acquisitions for the University's Gelman Library System. Complaint ¶ 7. Plaintiff was classified as a Librarian II. *Id*. From July 2003 through late 2005, Plaintiff's work performance either met or exceeded expectations. *Id.* at ¶ 8. By letter dated June 15, 2005, GW reappointed Plaintiff to the rank of Librarian II and extended Plaintiff's employment for an additional three years until June 30, 2009. *Id.* at ¶ 9. Defendant Siggins noted in the June 15, 2005 letter that "[t]he reappointment is recognition both by your colleagues and me of your substantial and productive work for the Gelman Library and the University. I am sure that you will take satisfaction in knowing that your work has been reviewed and valued in this way." *Id*.

In late 2005, Plaintiff's depression took a turn for the worse. Complaint ¶ 10. To the extent that Plaintiff's supervisors did not already know about his medical condition (they did, because he had previously notified them of his condition), they became aware at the end of 2005 and beginning of 2006 when Plaintiff notified them, including Defendant Siggins, both orally and in writing that he suffered from depression, that he suffered from a disability, and that he would benefit from certain reasonable accommodations in the workplace. *Id*.

By letter dated January 3, 2006, Defendants once again notified Plaintiff of his reappointment for a period of three years ending June 30, 2009. Complaint ¶ 11. In this January 3, 2006 letter, Defendants also noted that Plaintiff had also been assigned a *merit* increase of $2,227.92. *Id*.

Plaintiff's depression became so disabling that, in early February 2006, Plaintiff was forced to take approved family and medical leave (the "Initial Leave"). Complaint ¶ 12. During his Initial Leave, Plaintiff underwent intensive therapy and treatment as an outpatient at the Washington Psychiatric Institute. *Id*. Plaintiff was cleared by his treating physicians to return to work in late February 2006. *Id*. at ¶ 13. Plaintiff returned to work in late February 2006. *Id*. At or around this same time, Plaintiff again notified his supervisors, including Defendant Siggins, of his need for what he believed to be reasonable accommodations in the workplace on account of his disability. *Id*.

Plaintiff requested such accommodations several more times, both in writing and orally, between February and September 2006. Complaint ¶ 14. At Defendants' request, Plaintiff also provided Defendants with a letter from his treating physician in June 2006 that noted that: (a) Plaintiff suffered from major depressive disorder, attention-deficit disorder, and chronic migraine headaches; (b) Plaintiff's medical conditions had significantly worsened over the past eight months; (c) the worsening of the medical conditions likely accounted for any work-related problems; and (d) the nature of Plaintiff's medical condition was fixed. *Id*.

Rather than engage in an interactive process and work with Plaintiff to find suitable accommodations, Defendants took a series of illegal and retaliatory actions against Plaintiff designed at attempting to force Plaintiff to voluntarily resign his employment with GW. Complaint ¶ 15. These actions included (but were not limited to): (a) directing self-serving

communications to one of Plaintiff's treating physicians in a transparent attempt to elicit a statement from the physician that any accommodations sought by Plaintiff were necessarily unreasonable; (b) docking Plaintiff seven days of pay from his August 2006 paycheck; (c) refusing to allow Plaintiff to remain at work after 7:00 p.m.; (d) chastising Plaintiff for arriving at work after 9:00 a.m. (even though Defendants had agreed to allow Plaintiff to do so); (e) attempting to force Plaintiff to take long-term disability leave rather than working with Plaintiff to find accommodations in the workplace that would allow Plaintiff to continue to work at GW (even though Plaintiff had notified Defendants that he was most likely not eligible for long-term disability due to his preexisting condition); and (f) otherwise refusing to respond to Plaintiff's requests for reasonable accommodations in the workplace. *Id.*

Subsequent to Plaintiff's return from his Initial Leave, Defendant Siggins took it upon himself to personally harass, intimidate and attempt to force Plaintiff to resign his employment. Complaint ¶ 16. For example, on Plaintiff's first day back from work after the Initial Leave, Defendant Siggins personally attacked Plaintiff by asking intimidating and inappropriate questions and making clear to Plaintiff that he was on a short leash and that Siggins would be watching him closely. *Id.* Defendant Siggins took these actions even though he knew Plaintiff was particularly emotionally sensitive upon returning from his leave and that Plaintiff had just spent two weeks as an outpatient at the Washington Psychiatric Hospital. Further, in Mid-April 2006, Defendant Siggins called Plaintiff into his office under the guise of discussing Plaintiff's recent performance and stated that "[i]f it hadn't been for your FMLA leave and hospitalization for mental illness I would fire you." *Id.* Defendant Siggins subsequently and *retroactively* changed Plaintiff's July 2004 through July 2005 performance review to eliminate Plaintiff's stellar performance ratings and to reflect Plaintiff's allegedly poor performance. *Id.* Defendant

Siggins' actions limited Plaintiff's ability to effectively perform his duties as Head of Acquisitions for the Gelman Library System and caused Plaintiff tremendous emotional distress to the point where he was forced, in September 2006, to take an additional medical leave (the "Second Leave"). *Id*. at ¶ 17.

Plaintiff returned from his Second Leave in October 2006. Complaint ¶ 18. Upon Plaintiff's return, Defendants continued to fail to accommodate Plaintiff's requests for reasonable accommodations in the workplace and continued fail to engage in the interactive process required by law. *Id*. Moreover, Defendant Siggins continued his emotional harassment and intimidation of Plaintiff, stating that he (Siggins) (a) would not be as generous as Plaintiff's former first-line supervisor (who was to retire in October 2006), and (b) doubted that Plaintiff could meet his expectations. *Id*. Defendants terminated Plaintiff's employment shortly thereafter, on November 16, 2006. *Id.* at ¶ 19.

Plaintiff initiated this action by filing his eight count complaint on February 2, 2007. At Count I of the Complaint, Plaintiff asserts a claim for discrimination and retaliation against GW under the FMLA. At Counts II and III of the Complaint, Plaintiff asserts claims for discrimination and retaliation against both Defendants under the DCFMLA and the DCHRA. At Counts IV and V of the Complaint, Plaintiff asserts claims against GW for breach of contract and breach of the implied duty of good faith and fair dealing. At Count VI of the Complaint, Plaintiff asserts a claim for promissory estoppel against both Defendants. Finally, at Counts VII and VIII of the Complaint, Plaintiff asserts claims for intentional infliction of emotional distress and intentional interference with employment/business relations against Defendant Siggins.

Defendants answered as to Counts I through VI of the Complaint on April 23, 2007. *See* Docket Entry No. 4. On that same day, Defendant Siggins individually moved to dismiss

5

Plaintiff's claims for intentional infliction of emotional distress and intentional interference with employment/business relations at Counts VII and VIII of the Complaint.  *See* Docket Entry No. 6.

### III.  Argument

#### A.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) (citations omitted); *Saunders v. Hankerson*, 312 F. Supp. 2d 46, 71 (D.D.C. 2004).  The Court should accept as true all factual allegations in the complaint, and give plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

#### B.  The Complaint States a Claim for Intentional Infliction of Emotional Distress

Defendant Siggins first moves to dismiss Plaintiff's claim for intentional infliction of emotional distress found at Count VII of the Complaint.  To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; and (3) the conduct caused severe emotional distress.  *See Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982); *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 383 (D.C. 2003).  As set forth below, Plaintiff meets the applicable standard here.

With regard to the first prong necessary to state a *prima facie* case of intentional infliction of emotional distress – "extreme or outrageous conduct" – the D.C. Court of Appeals has emphasized that its cases recognize that the "extreme and outrageous character of the

conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Drejza, v. Vaccaro*, 650 A.2d 1308, 1314 (D.C. 1994), quoting Restatement (Second) of Torts s 46 cmt. f (1965). Plaintiff satisfies that standard here, as he has alleged that Defendant Siggins' actions vis-à-vis Plaintiff were taken with full knowledge that Plaintiff was peculiarly susceptible to emotional distress by reason of Plaintiff's mental condition. *See* Complaint ¶¶ 3, 10, 13, 14, 16 and 18 (alleging that, as one of Plaintiff's supervisors, Defendant Siggins was fully aware of Plaintiff's fragile mental condition, was aware that Plaintiff had taken medical leave and was an outpatient at the Washington Psychiatric Hospital, and at all times relevant regarded Plaintiff as disabled). District of Columbia courts have also emphasized that where (as here), a Plaintiff has alleged a pattern of *illegal discrimination or harassment*, such conduct can amount to "extreme or outrageous conduct." *See*, *e.g.*, *Howard University v. Best*, 484 A.2d 958, 986 (D.C. 1984) (holding that racial or sexual harassment and other "[a]ctions which violate public policy may constitute outrageous conduct sufficient to state a cause of action for infliction of emotional distress"); *Green v. American Broadcasting Companies, Inc.*, 647 F. Supp. 1359 (D.D.C. 1986) (Actions that violate public policy, including discrimination, can constitute such extreme and outrageous conduct"); *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 65 (D.D.C. 2006) (stating that discrimination can amount to extreme and outrageous conduct). Here, Plaintiff alleges repeated acts of discriminatorily motivated harassment and sabotage by Defendant Siggins (*see*, *e.g.*, Complaint ¶¶ 15, 16, 17, 18, 53, 57, 58 and 59) that were in violation of public policy – namely, the FMLA, the DCFMLA and the DCHRA. These alleged acts were neither few nor isolated (indeed, Plaintiff has alleged that Defendant Siggins' illegally motivated actions spanned a period of no less than nine months), and if proven, could amount to extreme and outrageous

conduct by Defendant Siggins. *Park*, 436 F. Supp. 2d at 65 (denying motion to dismiss where, as here, plaintiffs alleged repeated acts over a period of time).

Plaintiff has similarly satisfied the second – "intentional or recklessly" – prong necessary to state a claim for intentional infliction of emotional distress. Plaintiff has alleged that Defendant Siggins' actions were both intentional and reckless. *See*, *e.g.*, Complaint ¶¶ 16, 18, 33 (alleging that Defendant Siggins acted with "reckless disregard and indifference to the rights of Plaintiff"), 35 (alleging that Defendant Siggins "intentionally discriminated against Plaintiff" in various ways), 36, 37, 53 (alleging that Defendant Siggins' actions were intentional, reckless and without just cause or excuse).

Plaintiff has also satisfied the third and final element of the tort of intentional infliction of emotional distress – "severe emotional distress to another." Plaintiff has alleged that Defendant Siggins' intentional actions caused Plaintiff severe and verifiable emotional distress. *See* Complaint ¶¶ 17, 53 (alleging that Defendant Siggins' actions caused Plaintiff severe emotional distress such that Plaintiff was forced to take a second medical leave). While the burden may ultimately be on Plaintiff to prove actual severe emotional distress, Plaintiff is not required to prove anything here, and he has pled the third and final prong of the test sufficiently to survive the instant Motion. *Park*, 436 F. Supp. 2d at 65 (finding plaintiffs' allegations that they suffered "severe emotional distress including embarrassment and ridicule" to be sufficient to survive a motion to dismiss).

Finally, Defendant appears to argue that Count VII should be dismissed because Plaintiff cannot *prove* the elements of the claim. *See* Motion at 4 (stating that "[t]o prevail on a claim for [intentional infliction of emotional distress], a plaintiff must *prove* [the three stated elements of the test]," and that District of Columbia courts "have been demanding in the *proof* required to

8

support an intentional infliction of emotional distress claim") (emphais added).  Indeed, most of the cases cited by Defendant Siggins in support of this argument were decided not at the motion to dismiss stage, but at the summary judgment stage or thereafter – *i.e.*, after the parties had engaged in discovery and collected all relevant evidence.   This argument is misguided (and, therefore, the vast majority of the cases cited in support thereof are inapposite), as a Rule 12(b)(6) motion tests only the sufficiency of the allegations, not whether the plaintiff ultimately will be able to prove the allegations.  Because, as set forth above, Plaintiff has adequately pled his claim for intentional infliction of emotional distress, Defendant Siggins' argument fails and the Motion should be denied as to Count VII.  *See Powers-Bunce v. District of Columbia*, Civ. No. 06-1586, 2007 U.S. Dist. LEXIS 21778 (D.D.C. Mar. 28, 2007) ("The Court concludes that, taking the entire Complaint in the light most favorable to Plaintiff, it states a claim for intentional infliction of emotional distress against the District … Whether this claim can survive discovery is not the issue; Plaintiff is entitled to all reasonable inferences that can be drawn in her favor, and her Complaint's allegations in Count II are sufficient to state a claim").

### C. The Complaint States a Claim for Intentional Interference

Defendant Siggins also moves to dismiss Plaintiff's claim for intentional interference with employment/business relations found at Count VIII of the Complaint.  To state a *prima facie* case for tortuous interference with a business relationship or reasonable expectation of prospective economic advantage, a plaintiff must allege:  (1) a valid business relationship or expectancy with a third party; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference by the defendant, causing a breach or termination of the

relationship or expectancy; and (4) resultant damage. *Bennett Enterprises, Inc., v. Dominos Pizza*, 45 F.3d 493, 499 (D.C. Cir. 1995).[1]

Plaintiff satisfies each element here. First, Plaintiff has alleged the existence of a valid business relationship or expectancy with a third party, Defendant GW. *See*, *e.g.*, Complaint ¶¶ 7-12 (noting that Plaintiff worked at GW since July 2003, that Plaintiff was reappointed to his position in June 2005, that Plaintiff had a valid expectancy to work for GW through June 30, 2009, and that Plaintiff had a contract of employment with GW). Second, Plaintiff has alleged that Defendant Siggins had knowledge of Plaintiff's business relationship/expectancy with Defendant GW. *See*, *e.g.*, Complaint ¶¶ 9 (noting that Defendant Siggins stated in a June 15, 2005 letter to Plaintiff that Plaintiff's "substantial and productive work" for the Defendant GW was valued and that Plaintiff's employment with Defendant GW would be extended for an additional three years, through June 20, 2009), 56. Third, Plaintiff has alleged that Defendant Siggins intentionally caused the breach of Plaintiff's business/employment expectancy with GW. *See*, *e.g.*, Complaint ¶¶ 16 (noting that Defendant Siggins intentionally harassed and intimidated Plaintiff in an effort to force Plaintiff to resign his employment), 36 (noting that Defendant Siggins' intentional actions led to Plaintiff's discharge), 57, 58. Fourth, Plaintiff has alleged that Defendant Siggins' intentional actions, outlined above, caused Plaintiff's damages. *See*, *e.g.*, Complaint 36, 37, 53, 59.

---

[1] Defendant Siggins seeks to have the Court apply the wrong legal standard to Count VIII of the Complaint. Defendant Siggins seeks to apply the legal standard for intentional interference with *contract* and not the distinct tort of interference with *employment/business relations*. *See* Motion at 7 (setting for the elements required to recover for *inducement of breach of contract*). Significantly, *Altimont v. Chatelain Samperton & Nolan*, 374 A.2d 284 (D.C. 1977), upon which Defendant Siggins relies, notes this distinction. *Compare Altimont*, 374 A.2d at 288 (setting forth the elements for inducement of breach of *contract*), with *Altimont*, 374 A.2d at 289 (setting for the elements for tortious interference with *business relations*). The other cases relied upon by Defendant Siggins in support of his efforts to dismiss Count VIII of the Complaint similarly apply the standard for intentional interference with *contract* – not interference with *employment/business relations* – and therefore are inapplicable here.

Finally, as a last ditch effort, Defendant Siggins argues that that he is shielded from personal liability as Plaintiff's former supervisor.  *See* Motion at 7-8.  This argument misses the mark, as the law affords supervisors a qualified privilege to *act properly and justifiably* toward a fellow employee.  The privilege "is vitiated when the supervisor acts with malice for the purpose of causing another employee's contract to be terminated."  *Sorrells v. Garfinkel's. Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285, 291 (D.C. 1989).  In other words, "the [privilege] does not protect one who procures a discharge of the plaintiff for an improper or illegal purpose."  Here, Plaintiff has alleged that Defendant Siggins' procurement of Plaintiff's discharge was for improper and illegal purposes – namely (1) discrimination and harassment on the basis of Plaintiff's disability, and (2) to terminate Plaintiff's employment relationship with GW.  Plaintiff has also alleged that Defendant Siggins acted outside of the scope of his own employment with GW in intentionally interfering with and terminating Plaintiff's employment/business relationship with Defendant GW.  *See* Complaint ¶ 58.  Thus, even if the privilege were potentially available to Defendant Siggins as Plaintiff's former supervisor, his actions vis-à-vis Plaintiff in this case would not entitle him to the protections of the privilege.[2]

**IV.    Conclusion**

For the foregoing reasons, Defendant Siggins' Partial Motion to Dismiss Counts VII and III of the Complaint should be denied.

---

[2] Relying on *Press v. Howard University*, 540 A.2d 733, 736 (D.C. 1998), Defendant Siggins also argues that he is immune from liability as an "officer" of GW.  Defendant Siggins' reliance on *Press* is misplaced.  The Court in *Press* concluded (after discovery) that the individual defendants were officers of Howard University.  Here, Defendant Siggins is not an "officer" of GW.  GW's web site supports this conclusion, as it does not list Defendant Siggins as part of its "administration."  In any event, *Press* was decided on summary judgment, after discovery had been conducted.  Here, at this early stage of this litigation, we have no evidence – other than Defendant Siggins' own self-serving statements – that he is an officer of GW.

Dated: May 7, 2007                                    Respectfully submitted,


*//s// Jason H. Ehrenberg*

_____

Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
Tel:  (202) 465-4729
Fax:  (202) 318-7071
jhe@becounsel.com

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

I certify that a true copy of Plaintiff's Memorandum in Opposition to Defendant Siggins' Partial Motion to Dismiss was served on this 7th day of May 2007, via the District Court's ECF electronic filing system, upon the following:

Raymond C. Baldwin
Stephanie E. Sawyer
Seyfarth Shaw LLP
815 Connecticut Ave, N.W. Suite 500
Washington, D.C. 20006

*//s// Jason H. Ehrenberg*
_____
Jason H. Ehrenberg