**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Mark Langer ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:07CV00262(EGS) |
| The George Washington University ) | |
| ) | Judge Emmet G. Sullivan |
| and ) | |
| ) | |
| Jack A. Siggins ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT JACK A. SIGGINS' REPLY BRIEF IN SUPPORT OF HIS PARTIAL
MOTION TO DISMISS**

Defendant Jack A. Siggins, by and through his undersigned counsel, hereby submits his

Reply Brief in Support of his Partial Motion to Dismiss.

**I.     Argument**

**A.     The Complaint Does Not Allege "Extreme And Outrageous" Conduct.**

Plaintiff does not dispute that to state a claim for Intentional Infliction of Emotional

Distress ("IIED") he must plead that Defendant Siggins' alleged conduct was "extreme <u>and</u>

outrageous."  Nor does Plaintiff challenge the accepted principal that his burden in intentional

infliction of emotional distress claims is exceedingly high and stringent, and that it is rarely met.

*Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997).  Plaintiff does not dispute that his

allegations concern matters involving the workplace and that courts have been "particularly

demanding" where an IIED claim is brought "in an employment context."  *Paul v. Howard*

*Univ.*, 754 A.2d 297, 307 (D.C. 2000).  Instead, he makes conclusory assertions that Dr. Siggins'

alleged conduct constituted "extreme or outrageous conduct" (Pl. Opp. at 6) and therefore his IIED claim should survive dismissal, primarily because Dr. Siggins allegedly had "full knowledge that Plaintiff was peculiarly susceptible to emotional distress," and because Plaintiff has alleged "illegal discrimination or harassment." (Pl. Opp. at 7). Plaintiff misses the mark. The allegations of the Complaint do not come close to alleging conduct sufficiently extreme <u>and</u> outrageous to meet this exceedingly high standard established by the District of Columbia courts for an IIED claim to survive a motion to dismiss. *See, e.g., Carey v. Edgewood Management Corp.*, 754 A.2d 951, 955-56 (D.C. 2000)(upholding dismissal at 12(b)(6) stage and noting that "[i]f that standard [for IIED] means what it says, then the conduct alleged must truly be extraordinary to hold a defendant accountable for this tort").

Plaintiff's argument that one's alleged susceptibility to emotional distress may contribute to the outrageousness of the defendant's conduct is merely an attempt to shift the focus from the nature of the alleged conduct – where it belongs. Indeed, the case to which Plaintiff cites for his argument serves primarily to underscore that the conduct of which Plaintiff complains <u>was not</u>, in fact, extreme and outrageous. In *Drejza v. Vaccaro*, the plaintiff was violently beaten, choked, raped, and sodomized. 650 A.2d 1308, 1309 (D.C. 1994). Only one hour after the violent rape, the police detective to whom she was attempting to report the attack ridiculed, bullied, and humiliated the recent victim, coerced her into not pressing charges, snickered at her, and even tossed her torn underwear at her. *See Id.* at 1309-1312. In the instant case, by comparison, Plaintiff complains that he was told and warned that his work performance, including his attendance, was inadequate, was being monitored, and that his supervisors did not believe he was meeting their expectations, was given a poor performance appraisal, did not get all the workplace accommodations he sought, and, eventually, that his employment was

terminated (Compl. ¶ 15, 16, 17, 18, 19). By the very stringent standards for asserting a cause of action for IIED, the conduct allegedly displayed by Dr. Siggins was neither extreme nor outrageous, regardless of the fact that Plaintiff may have undergone outpatient treatment for depression in early 2006.  Surely, Plaintiff's treatment for depression that year (or in the previous years in which he allegedly suffered "depressive disorder . . . for much of his adult life," Pl. Opp. at 2) did not shield him from the basic requirement that he perform the essential functions of his job, or from being held to attendance or performance standards, and did not turn Dr. Siggins' discussion or management of these routine employment matters into an intentional tort.  *See Heasley v. D.C. General Hospital, et al.*, 180 F. Supp. 2d 158, 173 (D.D.C. 2002)(granting motion to dismiss IIED claim and holding that defendant's failure to accommodate purportedly disabled plaintiff, termination of plaintiff's employment, and unpleasant remarks by co-workers did not rise to level of extreme and outrageous conduct); *Paul*, 754 A.2d at 308 (allegations that plaintiff suffered from heightened levels of stress, high blood pressure, and disrupted sleep as a result of defendant's conduct, and defendant wrongfully denied her tenure, reassigned her grants and students, required her to vacate her office, and otherwise discriminated against her in violation of the D.C. Human Rights Act, insufficient as a matter of law to support claim of intentional infliction of emotional distress).

Plaintiff's argument that where a plaintiff alleges "a pattern of *illegal discrimination or harassment*, such conduct can amount to 'extreme or outrageous' conduct,"  Pl. Opp. at 7, is equally unavailing.  Although some complaints for discrimination or harassment may also state a claim for IIED, simply because a plaintiff pleads discrimination or harassment does not mean that he has also stated a claim for IIED, and it certainly does not lower the pleading standard for that independent tort.  Indeed, the very case cited by Plaintiff, *Howard Univ. v. Best*, 484 A.2d

3

958 (D.C. 1984), makes this clear.  In *Best*, the court <u>rejected</u> the plaintiff's IIED claim based on the defendant's interference with the plaintiff's professional responsibilities – that defendant prevented her from attending workshops, recalled administrative proposals she had made, and dismissed faculty members without consulting her – although it upheld the IIED claim based on that supervisor's inappropriate touching of the plaintiff, repeated propositioning of her, and making vulgar comments about her to others.  *Id*. at 986.  Other courts have similarly disallowed IIED claims in the workplace where the harassment is of an "occupational threat" that interferes with the employee's work conditions, opportunities, or continued employment, even if it is because of the employee's protected class, *see Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997)(plaintiff failed to state a claim for IIED despite alleging that his boss "targeted him for a sexual harassment investigation, manufactured evidence against him . . . to establish a false claim of sexual harassment, leaked information . . . unjustifiably demoted him"), and have only allowed IIED claims in the workplace to go forward where there are extreme and outrageous allegations of harassment of a "personal, sexual, and physical nature." *See Kassem v. Washington Hospital Center*, Civ. No. 05-2352, 2006 WL 2474098. *3 - 4 (D.D.C. Aug. 25 2006).  Here, Plaintiff has not made a claim for harassment, but for failure to accommodate and discriminatory termination.  Moreover, any "harassment" type allegations fall squarely in the "occupational threat" category found not to constitute IIED in *Best* and *Kerrigan*.  *See also Lockamy v. Truesdale*, 182 F.Supp.2d 26, 38 (D.D.C. 2001)(allegations that plaintiff was intentionally harassed, intimidated, threatened, and cursed at by his supervisor, that his work was sabotaged and unfairly scrutinized, denied opportunity to work overtime, forbidden to use certain equipment that others were permitted to use, and that he was instructed that he could not address white employees by their first names and could not speak to certain African-American

4

employees, while potential violations of Title VII, do "not reach the very stringent level required

to qualify as extreme and outrageous");  *Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003

(D.D.C. 1991) (while allegations that defendant refused to provide plaintiff with a secretary, a

computer and support services given to younger employees, and that it promoted younger

workers to positions for which he was qualified may indicate a violation of public policy with

regard to age discrimination, allegations do not rise to the level of outrageous conduct necessary

to state a claim for intentional infliction of emotional distress).

**II.    Plaintiff's Claim for Intentional Interference with Employment Relations Fails**

Plaintiff wholly fails to counter Dr. Siggins' argument that Plaintiff's claim for

Intentional Interference must be dismissed because Dr. Siggins, as University Librarian, cannot

interfere with any alleged contract to which he would have been, by virtue of his position at GW

and his alleged actions, in effect, a party.[1]  *See Sorrel v. v. Garfinkel's Brooks, Brothers, Miller

& Rhoads, Inc.*, 565 A.2d 285, (D.C. 1989)("a person who is a party to the broken contract

cannot be liable for contractual interference")(*citing Wilmington Trust Co. v. Clark*, 289 Md.

313, 329 (1981)).  Plaintiff's recitation of the law treats Dr. Siggins as a mere supervisor who,

under the law, would be entitled to a qualified privilege.  Dr. Siggins, however, is not only a

supervisor (and therefore also entitled to a qualified privilege); Dr. Siggins is the University

Librarian and party to the purported contract, he was capable of creating any purported contract

---

[1]  Instead, Plaintiff devotes time and ink to arguing that Defendant has cited to the incorrect legal
standard.  Of course, and as Plaintiff fails to recognize, the legal standards for Intentional
Interference cited by Defendant and Plaintiff are substantively the same, *compare,* Defendant
Siggins' Memorandum of Points and Authorities at 7 *with* Plaintiff's Opposition at 9-10.
Moreover, because Defendant Siggins assumes, *arguendo*, for purposes of this Motion only, that
Plaintiff has pled a *prima facie* case for Intentional Interference, this standard and Plaintiff's
discussion of it is irrelevant.

with Plaintiff and of terminating Plaintiff's employment. (Compl. ¶ 9, 19, 35, 38; Ex. A)[2];  *See Sorrells.*, 565 A.2d 285, (D.C. 1989)(distinguishing mere supervisor subject to qualified privilege from one with authority to make and abrogate contracts, authority to hire and fire employees).  Accordingly, this claim should be dismissed because Dr. Siggins cannot have interfered with a contract or employment relationship to which he is a party.

Even assuming that Defendant Siggins is not completely shielded from liability and is subject only to the supervisory qualified privilege, this claim must still be dismissed because Plaintiff has not and cannot allege facts that would vitiate the qualified privilege applicable to supervisors.  *See Sorrells*, 565 A.2d at 292.  Specifically, Plaintiff has not alleged that Dr. Siggins acted with malice.  *Id.*  Plaintiff's allegation that Dr. Siggins acted to discriminate and harass Plaintiff does not equate to malice; "[i]n the context of a qualified privilege, the definitions of malice 'in substance come[s] down to the equivalent of bad faith.'"  *Sorrells*, 565 A.2d at 292, *citing, Ingber v. Ross,* 479 A.2d 1256, 1264 n. 9 (D.C.1984)(citation omitted).  Here, there are no factual allegations to suggest that Dr. Siggins acted in bad faith or in any manner not calculated to further The George Washington University's interests.  Moreover, Plaintiff's allegation that Dr. Siggins "acted outside the scope of his own employment" is a legal conclusion unsupported by factual allegations and is entitled to no weight.  *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)(at motion to dismiss stage, court must not accept legal conclusions cast in the form of factual allegations).

## III.    Conclusion

---

[2] Indeed, Plaintiff concedes that <u>Dr. Siggins</u> signed Plaintiff's June 15, 2005 reappointment letter, which Plaintiff claims is the purported "contract" with which Dr. Siggins interfered.  *See* Pl. Opp. at 10 (*citing* Compl. at ¶ 9).

DC1 30198363.3

For the foregoing reasons, and for the reasons set forth in his initial Memorandum of

Points and Authorities, Defendant Siggins' Partial Motion to Dismiss should be granted.


DATED: May 17, 2007                          Respectfully submitted,

                                             JACK A. SIGGINS

                                             By /s/ Raymond C. Baldwin
                                             Raymond C. Baldwin (Bar No. 461514)
                                             Stephanie E. Sawyer (Bar No. 485977)

                                             SEYFARTH SHAW LLP
                                             815 Connecticut Avenue, NW, Suite 500
                                             Washington, DC 20006
                                             (202) 463-2400

                                             Attorneys for Defendants

DC1 30198363.3