**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| MARK LANGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-262 (EGS) |
| v. ) | |
| ) | |
| THE GEORGE WASHINGTON UNIVERSITY, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Mark Langer worked as Head of Acquisitions for The George Washington University's ("GW" or "University") Gelman Library System until he was terminated in November 2006. Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), District of Columbia Family and Medical Leave Act ("DCFMLA"), and District of Columbia Human Rights Act ("DCHRA"), in addition to various common law claims. Pending before the Court is defendant Jack A. Siggins' Partial Motion to Dismiss. Siggins seeks to dismiss plaintiff's intentional infliction of emotional distress claim (Count VII) and intentional interference with employment relationship and/or business relations claim (Count VIII). For the reasons stated below, the Court **denies** Siggins' motion.

**I.   BACKGROUND**

Plaintiff began working as Head of Acquisitions for the University's Gelman Library System in July 2003.  He was classified as a Librarian II.  In June 2005, plaintiff was reappointed to the rank of Librarian II and his employment was extended through June 30, 2009.

Before plaintiff began work at GW and during the time he worked there, he suffered from major depressive disorder, attention-deficit disorder, and chronic migraine headaches. Plaintiff was officially diagnosed with these conditions in 1995. In late 2005, plaintiff's depression worsened.  At the end of 2005 or beginning of 2006, he notified his employer that he suffered from depression and a disability and would benefit from certain accommodations in the workplace.  In February 2006, plaintiff was forced to take medical leave as a result of his depression.  He underwent intensive outpatient therapy at the Washington Psychiatric Institute during that time.  Plaintiff was cleared to return to work by his treating physicians in late February 2006.  Plaintiff requested accommodations on account of his disability several times throughout 2006.  Plaintiff also provided his employer with a letter in June 2006 from his treating physician regarding his worsening medical condition.

Plaintiff claims that rather than working with plaintiff to find suitable accommodations, defendants GW and Jack Siggins

(plaintiff's supervisor and University Librarian) took a series of illegal and retaliatory actions against plaintiff. Specifically, plaintiff alleges that defendants communicated with one of plaintiff's treating physicians in an attempt to elicit a statement that plaintiff's requested accommodations were unreasonable, docked plaintiff seven days pay in August 2006, refused to allow plaintiff to work after 7:00 p.m., chastised plaintiff for arriving after 9:00 a.m. even though plaintiff received permission to do so, attempted to force plaintiff to take long-term disability rather than working with plaintiff to find accommodations in the workplace, and otherwise refused to respond to plaintiff's reasonable requests for accommodations in the workplace.

Plaintiff also alleges that defendant Siggins personally harassed and intimidated plaintiff and attempted to force plaintiff to resign.  Siggins allegedly asked plaintiff intimidating and inappropriate questions on his first day back to work, told plaintiff he was on a short leash, told plaintiff he would have fired him if it was not for the FMLA, and retroactively changed plaintiff's July 2004 through July 2005 performance ratings to eliminate plaintiff's alleged stellar performance ratings and reflect his alleged poor performance.

Plaintiff claims that defendants' actions prevented him from adequately performing his job as Head of Acquisitions and caused

plaintiff tremendous emotional distress, resulting in the need for additional medical leave in September 2006. When plaintiff returned from this second period of leave in October 2006, plaintiff claims that defendants again failed to provide reasonable accommodations in the workplace. Plaintiff further alleges that defendant Siggins continued his emotional harassment and intimidation of plaintiff. On November 16, 2006, defendants terminated plaintiff's employment with GW.

In his complaint, plaintiff alleges the following claims against GW only: FMLA retaliation and discrimination (Count I), breach of contract (Count IV), and breach of the implied covenant of good faith and fair dealing (Count V). As to defendant Siggins only, plaintiff alleges intentional infliction of emotional distress (Count VII) and intentional interference with employment relationship and/or business relations (Count VIII). Plaintiff also alleges that both defendants are liable for DCFMLA discrimination and retaliation (Count II), DCHRA discrimination and retaliation (Count III), and promissory estoppel (Count VI).

**II.   STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must present "enough facts to state a claim to relief that is plausible on its face," and "above the speculative level." *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007). The Court will accept as true all factual allegations in the complaint, and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See id*. at 1965; *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

**III. ANALYSIS**

Defendant Siggins has moved to dismiss Count VII (intentional infliction of emotional distress) and Count VIII (intentional interference with employment relationship and/or business relations) of the Complaint.

**A.   Intentional Infliction of Emotional Distress**

In Count VII of his Complaint, plaintiff asserts a claim of intentional infliction of emotional distress against defendant Siggins, claiming that Siggins' conduct toward him was extreme and outrageous. Siggins argues in his motion to dismiss that none of the conduct alleged is sufficiently extreme and outrageous to sustain a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant engaged in "extreme and outrageous" conduct that was intentional or reckless and that caused severe emotional distress to another. *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997). This "very demanding standard" is "only infrequently met." *Dale v.*

*Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997). Conduct is considered "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) (citing Restatement (Second) of Torts § 46 cmt. d (1965)). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" are not sufficient. *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Courts are "particularly demanding" when intentional infliction of emotional distress claims are made "in an employment context." *Paul v. Howard Univ.*, 754 A.2d 297, 307 (D.C. 2000). Employer-employee conflicts generally do not, as a matter of law, rise to the level of outrageous conduct. *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984). Moreover, the mere discharge of an employee is not considered extreme and outrageous conduct sufficient to state an intentional infliction of emotional distress claim. *Teifenbacher v. AARP*, Civil Action No. 05-1802, 2006 U.S. Dist. LEXIS 23629, at *12 (D.D.C. Apr. 27, 2006); *Elliot v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993).

In some circumstances, however, the extreme and outrageous nature of conduct underlying an intentional infliction of emotional distress claim "'may arise from the actor's knowledge

6

that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" *Drejza v. Vaccaro*, 650 A.2d 1308, 1313 (D.C. 1994) (quoting Restatement (Second) of Torts § 46 (1965)).  Conduct "may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know."  *Id.*; *see also Boyle v. Wenk*, 392 N.E.2d 1053, 1056 (Mass. 1979) ("[T]hough there is no evidence that Wenk knew the precise nature of Mrs. Boyle's physical susceptibility, his knowledge that she had just returned from the hospital put him on notice that she might be more vulnerable to harassment or verbal abuse.").  If plaintiff's alleged distress is exaggerated and unreasonable under the circumstances, there is no liability "unless it results from a peculiar susceptibility to such distress of which the actor has knowledge."  Restatement (Second) of Torts § 46 cmt. j.

Plaintiff alleges a series of acts by Siggins over a period of about nine months in 2006.  Specifically, plaintiff alleges that Siggins did not engage in the interactive process and work with plaintiff to find suitable accommodations for his disability, tried to encourage plaintiff to voluntarily resign from his position, personally harassed plaintiff by asking him intimidating and inappropriate questions on his first day back from leave, retroactively changed plaintiff's performance review

to a lower rating, and made comments to plaintiff indicating that he wanted to fire him, that he doubted plaintiff could meet his expectations, and that plaintiff should just consider resigning immediately. While these claims as alleged would not likely constitute extreme and outrageous conduct in the absence of any alleged medical condition, *see, e.g., Teifenbacher*, 2006 U.S. Dist. LEXIS 23629, at *11-12 (dismissing intentional infliction of emotional distress claim where plaintiff claimed that various individuals at her work directed vulgar expletives at her, made obscene and crude comments in her presence, warned her to cease making complaints in a hostile and threatening manner, terminated her without an exit interview or severance pay, and escorted her out of the building like a common criminal); *Crowley v. North Am. Telecoms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997) (upholding dismissal where employee alleged that he "was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge"), plaintiff alleges both that he suffered from a serious mental health condition and that defendant Siggins was fully aware of his fragile mental state when harassing plaintiff. The Court cannot find as a matter of law that plaintiff has failed to state a claim for intentional infliction of emotional distress in the face of factual allegations that plaintiff suffered from such a serious mental health condition and that defendant Siggins had

knowledge of that condition.  Whether this claim can survive after discovery is a separate issue that the Court need not address at this time.  Accordingly, defendant Siggins' motion to dismiss plaintiff's intentional infliction of emotional distress claim (Count VII) is **denied**.

### B.   Intentional Interference with Employment Relations

In Count VIII of his complaint, plaintiff asserts a claim entitled "Intentional Interference with Employment Relationship and/or Business Relations," claiming that Siggins interfered with his employment contract and/or business relationship with GW.  Plaintiff appears to allege both intentional interference with a business relationship and intentional interference with contract relations in his Complaint.  *See* Compl. ¶¶ 55-58 (alleging interference with plaintiff's "contract and/or business relationship").

To recover on a claim for intentional interference with contract relations, a plaintiff must ultimately prove (1) the existence of a contract, (2) defendant's knowledge of that contract, (3) intentional procurement of the contract's breach by defendant, and (4) damages resulting from the breach. *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. 1989).  A claim of intentional interference with a business relationship requires four elements:  (1) the existence of a valid business relationship or expectancy, (2) knowledge of

9

that relationship or expectancy, (3) intentional interference causing a breach or termination of that relationship or expectancy, and (4) resulting damages. *See Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).

In this case, plaintiff alleges facts to show that he had a business relationship and/or contract with George Washington University, that Siggins, as his supervisor, had knowledge of that relationship and/or contract, that Siggins intentionally interfered and ultimately caused termination of that relationship and/or contract, and that plaintiff suffered damages. Specifically, plaintiff alleges that he started work for GW in 2003 and received a reappointment letter in 2005, which created an expectancy that he would be employed until June 2009. Plaintiff alleges that Siggins himself noted in the reappointment letter that plaintiff's reappointment was in recognition of his "substantial and productive work" for the Gelman Library and GW. Compl. ¶ 9.  Plaintiff alleges that Siggins intentionally harassed and intimidated plaintiff in an effort to force him to resign from the University.  Finally, plaintiff alleges damages in the form of loss of employment, loss of income and benefits, emotional distress, and embarrassment.

Under D.C. law, a party, through the actions of its agents, cannot interfere with its own contract. *Press v. Howard Univ.*, 540 A.2d 733, 736 (D.C. 1988).  In *Press*, the D.C. Court of

Appeals upheld the trial court's decision that there was no intentional interference with a contract where a former faculty member sued university officials claiming that they interfered with his contract with the university and caused him to be fired. *Id*. The court of appeals found that the defendant officials were officers of the university and thereby acting as agents of the university and could not be liable for interference in the university's contract. *Id*. The year after *Press*, the D.C. Court of Appeals distinguished mere supervisory employees from officers of the university. *See Sorrells*, 565 A.2d at 290. The court of appeals found that the officers in *Press* were acting as an alter ego of the university and had the power to bind the university. *Id*. By contrast, in *Sorrell*, the court of appeals found that a supervisor, as opposed to an officer, could be found liable for tortious interference with contract. *Id*. In this case, plaintiff alleges that Siggins was his supervisor and the Court cannot find absent any discovery that Siggins was an officer of the University with the power to bind the university in a contract. Moreover, although Siggins signed plaintiff's reappointment letter, the letter references a Library Review and Development Committee that deliberated on the decision of whether

to reappoint plaintiff.  *See* Letter from J. Siggins to M. Langer (June 15, 2005), Ex. A to Siggins' Partial Mot. to Dismiss.[1]

The law affords a supervisor such as Siggins "a qualified privilege to act properly and justifiably toward a fellow employee and that employee's true employers -- those who have the power to hire and fire."  *Sorrell's*, 565 A.2d at 291.  This privilege is vitiated, however, when a supervisor "acts with malice for the purpose of causing another employee's contract to be terminated."  *Id*.  A person "who maliciously procures the discharge of another by their common employer is not shielded from liability by his or her status as a supervisory employee."  *Id*.  Plaintiff alleges that his supervisor, Siggins, harassed and intimidated him and tried to force him to resign.  Plaintiff also alleges that he was discharged from his employment.  The Court finds that plaintiff has alleged enough facts to at least warrant discovery on whether his supervisor acted with malice in interfering with his employment contract and/or business relationship with GW.

Plaintiff states a claim under both the standard for intentional interference with a contract and intentional interference with business relations, as the standard is

---

[1] As this letter was referred to and quoted from in the Complaint and is central to plaintiff's claim, the Court can consider this letter without converting the motion to dismiss to a motion for summary judgment.  *See Daisley v. Riggs Bank, NA*, 372 F. Supp. 2d 61, 67 n.1 (D.D.C. 2005).

essentially the same whether one is allegedly interfering in a contract specifically or a business relationship more generally. Accordingly, defendant's motion to dismiss Count VIII of the complaint is **denied**.

### IV. CONCLUSION

For the foregoing reasons, the Court **denies** defendant Siggins' Partial Motion to Dismiss.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            July 30, 2007**